# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

JEREMY ROBERT HARRIS, Plaintiff,

**v.**

DEPUTY CORBETT BROWN, individually and in his official capacity;

DEPUTY RICH MYERS, Badge #151, individually and in his official capacity;

SERGEANT ERIC CASTON, Buffalo Missouri Police Department,
individually and in his official capacity;

JONATHAN D. BARKER, Dallas County Prosecuting Attorney,
individually and in his official capacity;

SHERIFF DARREN CHEEK, Dallas County Sheriff,
in his official capacity;

DALLAS COUNTY, MISSOURI;

DALLAS COUNTY SHERIFF'S DEPARTMENT;

and JOHN DOES 1-10,

Defendants.

Civil Action No. 6:26-cv-03430-MBB

**JURY TRIAL DEMANDED**

## CIVIL RIGHTS COMPLAINT
42 U.S.C. §§ 1983, 1985, 1986 | 18 U.S.C. §§ 1951, 1961-1968

## PRELIMINARY STATEMENT

Plaintiff Jeremy Robert Harris, a combat-disabled veteran of the United States Army who served in Iraq, brings this action against Dallas County, Missouri law enforcement officers, the Dallas County Prosecuting Attorney, the Dallas County Sheriff, and Dallas County itself for a systematic, documented pattern of civil rights violations, armed extortion, prosecutorial misconduct, and coerced guilty plea — all conducted under color of state law in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

This is not a case about traffic tickets. This is a case about what happens when a county government converts its police and court system into a revenue extraction machine, and what happens when a combat veteran asserts his constitutional rights and refuses to submit. The answer — documented in these pages — is a 90-minute courthouse stakeout, an unlawful vehicle impoundment, physical property damage, denial of the right to file a police report, six legal

motions suppressed by a coerced plea, and a prosecuting attorney who threatened an ill, alone, TBI-injured veteran with false contempt charges to extract a guilty plea to charges that the government's own statutes do not authorize.

Plaintiff seeks compensatory damages, punitive damages, declaratory relief, and emergency injunctive relief staying the conditions of the coerced Suspended Imposition of Sentence entered June 9, 2026.

## I. JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (a)(4), as Plaintiff asserts claims arising under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983, 1985, and 1986, and 18 U.S.C. §§ 1951 and 1961-1968.

2. Venue is proper in the Eastern District of Missouri, Western Division, pursuant to 28 U.S.C. § 1391(b)(2) because all acts and omissions giving rise to Plaintiff's claims occurred in Dallas County, Missouri.

3. This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 65.

4. This Court has authority to enjoin the state court SIS proceedings pursuant to 42 U.S.C. § 1983, which constitutes an 'expressly authorized' exception to the Anti-Injunction Act, 28 U.S.C. § 2283. Mitchum v. Foster, 407 U.S. 225 (1972) (https://supreme.justia.com/cases/federal/us/407/225/). Section 1983 was designed to interpose the federal courts between the States and the people to enforce the Fourteenth Amendment whether that action be executive, legislative, or judicial.

## II. YOUNGER ABSTENTION DOES NOT BAR THIS ACTION

Plaintiff anticipates that Defendants may raise Younger v. Harris, 401 U.S. 37 (1971) as a basis to abstain. This Court should decline abstention because all three recognized Younger exceptions apply.

### A. Bad Faith and Harassment

- The same officer — Deputy Brown — conducted a second stop of the same individual after a 90-minute courthouse surveillance operation, having identified Plaintiff inside the courthouse where Plaintiff was exercising his constitutional right to petition the court to contest the first stop.

- Jonathan D. Barker, Dallas County Prosecuting Attorney, threatened Plaintiff with contempt and potential arrest for filing threshold motions — a legally baseless threat, as filing motions is not contempt of court — to coerce a guilty plea.

- Mr. Barker refused to produce his oath of office, bar enrollment certificate, or election documentation when Plaintiff lawfully demanded them.

### B. Inadequate State Forum

Mr. Barker represents STATE OF MISSOURI. Every Missouri circuit court judge is a STATE employee. The court processing Plaintiff's citation revenue is secured by the same Dallas County Sheriff's Office whose deputies committed the violations at issue. Every institutional actor in the state forum benefits financially from outcomes adverse to Plaintiff. Structural bias cannot be its own solution.

## C. Great and Immediate Irreparable Injury

Plaintiff faces a deadline of approximately August 8, 2026 — the 60-day SIS registration and insurance condition. Non-compliance triggers a probation violation and potential incarceration. These harms are concrete, dated, and imminent.

## D. Post-Plea SIS Is Not a Pending Criminal Prosecution

Younger protects ongoing state criminal prosecutions. Plaintiff's case ended with a plea. What remains is a collateral civil supervisory regime — probation conditions attached to a coerced plea. Full Younger deference does not automatically extend to this posture.

## III. PARTIES

5. Plaintiff Jeremy Robert Harris resides at 1721 Highway 64, Lebanon, Missouri 65536. He is a service-connected disabled veteran of the United States Army, having served in combat in Iraq, sustaining a Traumatic Brain Injury (TBI) and Post-Traumatic Stress Disorder (PTSD). He proceeds in propria persona, sui juris. All rights reserved.

6. Defendant Deputy Corbett Brown is a sworn deputy of the Dallas County Sheriff's Department, acting under color of state law. He conducted both unlawful traffic stops described herein. Sued individually and in his official capacity.

7. Defendant Deputy Rich Myers, Badge #151, is a sworn deputy of the Dallas County Sheriff's Department, acting under color of state law. He redirected Plaintiff away from the official complaint process on January 20, 2026. Sued individually and in his official capacity.

8. Defendant Sergeant Eric Caston is a sworn sergeant of the Buffalo Missouri Police Department, acting under color of state law. He was present at the scene of the January 20, 2026 stop, had the authority and opportunity to accept Plaintiff's official complaint regarding Deputy Brown's conduct, and declined to do so. Sued individually and in his official capacity.

9. Defendant Jonathan D. Barker is the Dallas County Prosecuting Attorney, Bar No. 58520, acting under color of state law. He conducted the June 9, 2026 coercive private conversation, threatened Plaintiff with contempt and potential arrest, misrepresented procedural deadlines, and refused to produce credentials when lawfully demanded. Sued individually and in his official capacity.

10. Defendant Sheriff Darren Cheek is the duly elected Sheriff of Dallas County, Missouri, having taken office January 1, 2025. As the final policymaker for the Dallas County Sheriff's Department, he is sued in his official capacity for the policies, customs, and practices that produced the constitutional violations suffered by Plaintiff. Monell v.

Department of Social Services, 436 U.S. 658 (1978) (https://supreme.justia.com/cases/federal/us/436/658/).

11. Defendant Dallas County, Missouri is a political subdivision of the State of Missouri. It is liable under Monell for constitutional violations resulting from its policies, customs, and practices, including its revenue-driven traffic enforcement system.

12. Defendant Dallas County Sheriff's Department is the law enforcement agency of Dallas County, Missouri, whose deputies are the primary actors in the violations complained of.

13. John Does 1-10 are additional individuals whose identities are not yet known who participated in the violations described herein, including: Deputy Brown's direct supervisor; the towing company operator who dragged Plaintiff's van; the towing company entity holding the Dallas County impound contract; the Dallas County official responsible for citation revenue policy; the courthouse security supervisor on duty January 20, 2026; and additional individuals to be identified through discovery.

## IV. STATEMENT OF FACTS

### A. Plaintiff's Status

14. Plaintiff is a private, non-commercial traveler. He has never applied for a Missouri driver's license. He has never registered a motor vehicle with the State of Missouri. He has never entered the contractual regulatory framework through which Missouri's traffic code derives its authority over individuals.

15. RSMo § 300.095 provides that it shall be the duty of the 'officers and employees of this state and of its political subdivisions to obey the traffic regulations of this state.' Under the canon expressio unius est exclusio alterius — confirmed in Russello v. United States, 464 U.S. 16 (1983) — this express inclusion of public employees excludes all others. Plaintiff is not a public employee. The traffic statutes cited against him do not apply to him as a matter of law.

16. Plaintiff's 2003 Ford E-350 van displays a privately made plate reading 'DOT EXEMPT — PRIVATE — FOF NON-COMMERCIAL USE ONLY' — affirmative written notice of his private status and a deliberate exercise of his Fourth Amendment right to opt out of warrantless Automated License Plate Reader surveillance infrastructure. Carpenter v. United States, 585 U.S. 296 (2018).

### B. The October 14, 2025 Stop

17. On October 14, 2025, Deputy Brown activated emergency lights and stopped Plaintiff's van near Highway 64 in Buffalo, Missouri.

18. RSMo § 304.022(5)(1) prohibits activation of emergency lights except when responding to an emergency call, pursuing an actual or suspected law violator, or responding to a fire. No emergency existed. Plaintiff was not a law violator under any statute applicable to him. The activation of emergency lights constituted a violation of RSMo § 304.022(5)(1) — a Class A misdemeanor under § 304.022(7) — committed by Deputy Brown at the inception of the stop. A stop initiated by a criminal act is unlawful from its first moment. Wong Sun v. United States, 371 U.S. 471 (1963) .

**19.** Deputy Brown cited Plaintiff for RSMo § 303.025. Plaintiff's plate gave Deputy Brown affirmative written notice of his non-commercial status before any enforcement action. The conclusion that Plaintiff was a law violator under statutes that do not apply to him was objectively unreasonable. Terry v. Ohio, 392 U.S. 1 (1968).

**20.** Plaintiff's custom license plate was physically seized during or following the October 14, 2025 stop and has not been returned. This constitutes an unconstitutional seizure of personal property without due process and common law conversion.

## C. The January 20, 2026 Stop — The Courthouse Stakeout

**21.** On January 20, 2026, Plaintiff appeared at Dallas County Circuit Court to contest the October 14th citation. While in the courthouse hallway outside the Court Clerk's office, Deputy Brown approached Plaintiff and asked how he had gotten to court. Plaintiff answered that he had driven his van.

**22.** Deputy Brown then departed the courthouse and positioned his patrol vehicle adjacent to the courthouse parking area. He remained there for no less than ninety (90) minutes. His Computer-Aided Dispatch logs, GPS vehicle tracking data, and radio transmission records will establish that during this period he received no dispatch calls, responded to no incidents, and performed no legitimate law enforcement function. He was conducting targeted surveillance of Plaintiff in advance of a predetermined enforcement action.

**23.** When Plaintiff exited and began to depart, Deputy Brown activated his emergency lights and initiated a second stop. This stop was not triggered by observed driving conduct. Deputy Brown had decided to stop Plaintiff before Plaintiff drove home. No Terry-compliant reasonable suspicion based on observed driving conduct existed.

**24.** The January 20, 2026 stop was an act of First Amendment retaliation. It was initiated because Plaintiff appeared in court to challenge the first stop — a constitutionally protected activity. Under Nieves v. Bartlett, 587 U.S. 391 (2019), a retaliatory arrest claim survives where the plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same protected speech had not been. The objective evidence here is direct: Deputy Brown entered the courthouse during Plaintiff's court appearance, extracted information about Plaintiff's vehicle, conducted a 90-minute stationary surveillance operation targeting only Plaintiff, and activated emergency lights the moment Plaintiff's vehicle moved. No similarly situated traveler departing a courthouse without having just contested that specific officer's prior stop would have been subjected to such a predetermined enforcement action. The second stop also constitutes interference with Plaintiff's right of access to courts. Christopher v. Harbury, 536 U.S. 403 (2002).

**25.** Dallas County Courthouse is equipped with security cameras. Plaintiff demands immediate preservation of all footage from January 20, 2026 covering the hallway outside the Court Clerk's office and the courthouse parking area.

## D. Unlawful Impoundment and Property Damage

26. Following the January 20, 2026 stop, Deputy Brown ordered Plaintiff's van impounded. No custodial arrest was made. Plaintiff was present and explicitly refused to consent to the impoundment or provide his keys.

27. Missouri's impoundment statutes — RSMo §§ 304.155 and 304.157 — authorize removal of abandoned vehicles. Plaintiff's van was not abandoned. Plaintiff was standing next to it. The impoundment lacked any statutory basis. Warrantless impoundment requires lawful police custody. South Dakota v. Opperman, 428 U.S. 364 (1976). Because the underlying stop was unlawful, lawful custody never attached.

28. Because Plaintiff refused to provide keys, the towing company dragged the locked van, cracking the front bumper and flat-spotting the tires. This constitutes common law conversion, trespass to chattels, and deprivation of property without due process.

29. Plaintiff paid $250.00 in impound retrieval fees to recover his van — a direct, documented economic loss caused by the unlawful impoundment.

### E. Conspiracy to Deny Right to File Police Report — § 1985 and § 1986

30. Following the January 20, 2026 stop, Plaintiff sought to file an official police report regarding Deputy Brown's unlawful conduct. Deputy Myers directed Plaintiff away from the official complaint process, telling him to file an internal complaint with the same department committing the violations.

31. Sergeant Eric Caston of the Buffalo Missouri Police Department was present at the scene. As a sworn police sergeant from a separate agency, Sergeant Caston had both the authority and the opportunity to accept Plaintiff's complaint regarding a Dallas County deputy's conduct. Sergeant Caston declined to intervene or accept Plaintiff's complaint.

32. The coordinated action of Deputy Brown, Deputy Myers, and Sergeant Caston — stopping Plaintiff unlawfully, denying him the right to file an official complaint, and redirecting him to an internal process controlled by the violating department — constitutes a conspiracy under 42 U.S.C. § 1985 to interfere with Plaintiff's right to petition the government and his right to equal protection of the laws.

33. Sergeant Caston, having witnessed the conspiracy and having the power and authority of a sworn police sergeant from an independent agency to prevent it by accepting Plaintiff's official complaint, failed to do so in violation of 42 U.S.C. § 1986.

### F. The Coerced Guilty Plea — June 9, 2026

34. On June 8, 2026, Plaintiff filed six threshold motions with Dallas County Circuit Court raising substantial jurisdictional, statutory, and constitutional challenges to the prosecution, including a Motion to Dismiss for Failure to State a Claim and a Motion to Challenge Prosecutorial Authority.

35. On June 9, 2026, before Plaintiff's case was called, he witnessed another individual in the same courtroom be arrested and taken to jail.

36. At the time of the June 9, 2026 proceeding, Plaintiff was severely ill from a documented Alpha-gal Syndrome (AGS) episode. By June 9th, Plaintiff had not eaten in approximately three days and was in active physical pain. Plaintiff disclosed his

condition to the judge, Mr. Barker, both bailiffs, the court clerk, and the deputy at the courthouse entrance. Mr. Barker personally asked if Plaintiff was okay, acknowledging his visible distress.

37. Mr. Barker engaged Plaintiff in a private conversation in a sectioned area at the back of the courtroom, separated by a plexiglass partition. They were alone. During this conversation, Mr. Barker: (a) threatened Plaintiff with contempt of court and potential arrest for filing threshold motions — a legally baseless threat, as filing motions is not contempt of court and no court order existed that Plaintiff had violated; (b) told Plaintiff that motion deadlines had passed and his arguments were foreclosed — a material misrepresentation; (c) refused point blank to produce his oath of office, bar enrollment certificate, or election documentation when Plaintiff lawfully demanded them; (d) characterized Plaintiff's constitutional arguments as 'sovereign citizen' theory; and (e) dismissed Plaintiff's stated concern about structural bias as untimely.

38. Plaintiff stated to Mr. Barker: 'I'm basically in survival mode here.' This contemporaneous statement is direct evidence of Plaintiff's state of mind at the moment of coercion and is potentially captured on the courtroom's audio recording system.

39. Under these circumstances — severe physical illness, three days without food, service-connected TBI and PTSD, having just witnessed an arrest in the same courtroom, alone, facing a baseless threat of contempt and potential arrest — Plaintiff accepted a Suspended Imposition of Sentence on all three charges. He did not plead because he believed he was guilty. He pled to avoid being jailed before he could pick up his son on June 11, 2026.

40. The plea was not voluntary, knowing, or intelligent within the meaning of the Fifth, Sixth, and Fourteenth Amendments. Brady v. United States, 397 U.S. 742 (1970), established that a plea is constitutionally valid only if made voluntarily, knowingly, and intelligently — free from threats, misrepresentation, or exploitation of incapacity. Drope v. Missouri, 420 U.S. 162 (1975).

41. The SIS imposes a 60-day deadline to register Plaintiff's vehicle and obtain insurance — expiring approximately August 8, 2026 — and one year of unsupervised probation. These conditions flow from a constitutionally void plea and must be stayed pending resolution of this action.

## G. Monell Liability — Dallas County Policy, Custom, and Practice

42. Dallas County and Sheriff Darren Cheek, as final policymaker, are liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), because Plaintiff's constitutional violations resulted from Dallas County's official policies, customs, and practices, including:

- A de facto policy of revenue-driven traffic enforcement incentivizing citation generation as a county revenue source;

- A custom of retaliatory enforcement against individuals who challenge the county's enforcement authority — evidenced by the courthouse stakeout and second stop following Plaintiff's first court appearance;

- Failure to train deputies on the lawful requirements for activating emergency lights under RSMo § 304.022 — rising to deliberate indifference where the constitutional violation is a foreseeable consequence. City of Canton v. Harris, 489 U.S. 378 (1989);

- Ratification of Deputy Brown's conduct by supervisory officials who had knowledge of both stops and the courthouse surveillance and took no corrective action; and

- A structural policy of providing Dallas County Sheriff's Office security for the Dallas County Circuit Court that processes the Sheriff's revenue citations — creating an institutional conflict of interest that taints every citation prosecution.

## H. The RICO Enterprise

43. The coordinated conduct of the Dallas County Sheriff's Department, Jonathan D. Barker as Prosecuting Attorney, the Dallas County Circuit Court, the county treasury, and the towing company used in Plaintiff's impoundment constitutes an enterprise within 18 U.S.C. § 1961(4) whose affairs have been conducted through a continuous pattern of Hobbs Act extortion predicate acts — obtaining money from motorists through threatened force under color of official right. Evans v. United States, 504 U.S. 255 (1992).

44. The coerced plea of June 9, 2026 constitutes an additional Hobbs Act predicate act — Mr. Barker obtained Plaintiff's waiver of six pending motions and acceptance of SIS conditions through threatened contempt and potential arrest under color of official right.

45. The pattern is continuous and systematic across years of enforcement activity, satisfying both the relationship and continuity requirements of RICO. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S.229(1989).

## V. CAUSES OF ACTION

### COUNT I — 42 U.S.C. § 1983 — Fourth Amendment

Unlawful Seizure of Person and Property — Against Deputy Brown, Sheriff Cheek, and Dallas County

46. Plaintiff incorporates by reference all preceding paragraphs. Deputy Brown, acting under color of state law, deprived Plaintiff of his Fourth Amendment right to be free from unreasonable seizure through two stops initiated by criminal violation of RSMo § 304.022(5)(1) and without Terry-compliant reasonable suspicion, the warrantless unlawful impoundment of Plaintiff's vehicle, and the seizure of Plaintiff's custom license plate. Sheriff Cheek and Dallas County are liable under Monell.

### COUNT II — 42 U.S.C. § 1983 — First Amendment

Retaliation and Interference with Court Access — Against Deputy Brown, Sheriff Cheek, and Dallas County

47. Plaintiff incorporates by reference all preceding paragraphs. Deputy Brown retaliated against Plaintiff for exercising his First Amendment right to petition the government by conducting a 90-minute courthouse surveillance operation and initiating a second stop timed precisely to Plaintiff's departure from court. Plaintiff satisfies the Nieves v. Bartlett

objective evidence exception. The stop also constitutes interference with Plaintiff's right of access to courts. Christopher v. Harbury, 536 U.S. 403 (2002).

## COUNT III — 42 U.S.C. § 1983 — Fifth and Fourteenth Amendments

Coerced Plea — Against Jonathan D. Barker

**48.** Plaintiff incorporates by reference all preceding paragraphs. Mr. Barker deprived Plaintiff of his Fifth Amendment right against compelled self-incrimination, his Sixth Amendment right to trial, and his Fourteenth Amendment due process rights, by obtaining a guilty plea through a baseless threat of contempt and potential arrest, material misrepresentation of procedural law, and exploitation of Plaintiff's acute medical incapacity and service-connected TBI and PTSD. Absolute prosecutorial immunity does not apply — the contempt threat in a private plexiglass room, the credential refusal, and the false deadline statements are investigative and administrative functions, not judicial advocacy. Imbler v. Pachtman, 424 U.S. 409 (1976); Buckley v. Fitzsimmons, 509 U.S. 259 (1993).

## COUNT IV — 42 U.S.C. § 1983 — Fourteenth Amendment

Property Deprivation Without Due Process — Against Deputy Brown, Sheriff Cheek, and Dallas County

**49.** Plaintiff incorporates by reference all preceding paragraphs. Deputy Brown deprived Plaintiff of personal property — his custom license plate and his van — without due process. The van was returned only upon Plaintiff's payment of $250.00. The plate has never been returned. Physical damage during forced towing caused additional quantifiable loss.

## COUNT V — 42 U.S.C. § 1985 — Conspiracy

Against Deputy Brown, Deputy Myers, and Sergeant Caston

**50.** Plaintiff incorporates by reference all preceding paragraphs. Defendants Brown, Myers, and Caston conspired to interfere with Plaintiff's right to petition the government and his right to equal protection by coordinating to prevent Plaintiff from filing an official police report regarding Deputy Brown's unlawful January 20, 2026 conduct. Deputy Myers redirected Plaintiff to an internal process controlled by the violating department. Sergeant Caston, a sworn sergeant from an independent agency with authority to accept the complaint, declined to do so.

## COUNT VI — 42 U.S.C. § 1986 — Neglect to Prevent

Against Sergeant Caston

**51.** Plaintiff incorporates by reference all preceding paragraphs. Sergeant Caston knew of the § 1985 conspiracy described in Count V, had the power and authority as a sworn police sergeant from an independent agency to prevent it by accepting Plaintiff's official complaint, and neglected to do so.

## COUNT VII — 18 U.S.C. § 1951 — Hobbs Act Extortion

Against Deputy Brown, Jonathan D. Barker, and Dallas County

**52.** Plaintiff incorporates by reference all preceding paragraphs. Deputy Brown obtained money from Plaintiff — $250.00 in impound fees — through the unlawful stops and forced impoundment, property obtained with nominal consent induced by threatened force under color of official right. Mr. Barker obtained Plaintiff's waiver of six pending motions and acceptance of SIS conditions through threatened contempt and potential arrest under color of official right. Evans v. United States, 504 U.S. 255 (1992).

## COUNT VIII — 18 U.S.C. §§ 1962(c) and (d) — RICO

Against All Defendants

**53.** Plaintiff incorporates by reference all preceding paragraphs. Defendants constitute an enterprise conducting affairs through a continuous pattern of Hobbs Act extortion predicate acts. Plaintiff has suffered injury to property by reason of this racketeering activity and is entitled to treble damages, costs, and attorney's fees under 18 U.S.C. § 1964(c).

## VI. REQUEST FOR EMERGENCY INJUNCTIVE RELIEF

Plaintiff requests a Temporary Restraining Order and Preliminary Injunction staying all conditions of the Suspended Imposition of Sentence entered June 9, 2026. This request is more fully supported in Plaintiff's separately filed Emergency Motion for Temporary Restraining Order. The four-factor Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008), test is satisfied:

- Likelihood of success: Plaintiff's coerced plea claims are extensively documented. The statutory non-applicability arguments are legally sound. The constitutional violations are established by concrete facts including a $250 receipt, courthouse camera footage, and GPS data confirming the 90-minute stakeout.

- Irreparable harm: The August 8, 2026 deadline creates imminent concrete harm. Compliance with conditions of a void plea may constitute ratification. Non-compliance risks probation violation and potential incarceration.

- Balance of equities: Staying conditions of a potentially void plea harms no one. The State has no legitimate interest in enforcing conditions obtained through coercion of an ill, disabled veteran.

- Public interest: Vindicating the constitutional rights of a combat veteran against prosecutorial misconduct and revenue-driven law enforcement serves the most fundamental public interest.

## VII. DAMAGES

**54.** As a direct and proximate result of Defendants' conduct, Plaintiff has suffered: $250.00 in documented impound retrieval fees; physical damage to his 2003 Ford E-350 van — cracked front bumper and flat-spotted tires; value of custom license plate seized and not returned; costs of alternative transportation on January 20, 2026; loss of time and resources preparing six threshold motions suppressed by the coerced plea; ongoing deprivation of liberty, privacy, and dignity; emotional distress and exacerbation of

service-connected PTSD and TBI; treble damages under 18 U.S.C. § 1964(c) for RICO injuries; and punitive damages against individual Defendants for malicious and deliberately indifferent conduct.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter a Temporary Restraining Order and Preliminary Injunction staying all conditions of the Suspended Imposition of Sentence entered in Dallas County Circuit Court Case Nos. 210122974, 210122975, and 250701416 on June 9, 2026;

2. Enter a Declaratory Judgment that: (a) RSMo §§ 303.025, 301.020, and 301.130 do not apply to Plaintiff as a private, non-commercial traveler; (b) the October 14, 2025 and January 20, 2026 stops were unconstitutional; (c) the impoundment was unconstitutional; (d) the June 9, 2026 plea was obtained by coercion and is constitutionally void;

3. Award Plaintiff compensatory damages in an amount to be proven at trial;

4. Award Plaintiff punitive damages against individual Defendants;

5. Award Plaintiff treble damages under 18 U.S.C. § 1964(c);

6. Award Plaintiff attorney's fees and costs pursuant to 42 U.S.C. § 1988;

7. Issue a permanent injunction prohibiting Defendants from stopping Plaintiff on substantially identical grounds without prior judicial determination, enforcing the SIS conditions, and engaging in retaliatory enforcement;

8. Order immediate preservation of all courthouse camera footage from January 20, 2026 and Deputy Brown's GPS, CAD, radio, and body camera records for his January 20, 2026 shift; and

9. Grant such other and further relief as this Court deems just and proper.


Respectfully submitted this 20th day of July, 2026.


Jeremy Robert Harris

1721 Highway 64, Lebanon, Missouri 65536

sgt.harris.jeremy@gmail.com | 309-642-1893

Plaintiff, In Propria Persona, Sui Juris

All Rights Reserved — Without Prejudice

**JURY TRIAL DEMANDED ON ALL CLAIMS SO TRIABLE**