**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION**

| | | |
|---|---|---|
| JEREMY ROBERT HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:26-cv-03430-MBB |
| | ) | |
| DEPUTY CORBETT BROWN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is Plaintiff Jeremy Robert Harris's *pro se* Application for Leave to File Action Without Payment of Fees with Affidavit of Financial Status in Support. (**Doc. 1**). Plaintiff also filed a Motion for a Temporary Restraining Order and a Motion to Appoint Counsel. (**Doc. 2**); (**Doc. 3**). The motions are DENIED.

**Background**

Plaintiff attached a complaint to the pending IFP motion. (**Doc. 1-2**). In it, he admits that he "has never applied for a Missouri driver's license" and "has never registered a motor vehicle with the state of Missouri." (***Id.*** at p. 4). He apparently made his own license plate, which reads: "DOT EXEMPT – PRIVATE – FOF [sic] NON-COMMERCIAL USE ONLY." (***Id.***). He says the plate advertised his "private status" and was "a deliberate exercise of his Fourth Amendment right to opt out of warrantless Automated License Plate Reader surveillance infrastructure." (***Id.***).

The complaint says that Plaintiff's "custom license plate" caused Corbett Brown, a Dallas County, Missouri Sheriff's Deputy, to pull him over twice: once on October 14, 2025 and once on January 20, 2026. (***Id.*** at pp. 4-5). During the first traffic stop, Deputy Brown allegedly issued a citation to Plaintiff and seized his license plate. (***Id.*** at p. 5). During the second traffic stop, Deputy

Brown allegedly caused Plaintiff's vehicle to be impounded. (***Id.*** at p. 5). Plaintiff later paid $250 to retrieve the vehicle from "the towing company." (***Id.*** at p. 6). On June 9, 2026, Plaintiff allegedly pled guilty to three separate charges stemming from the two traffic stops. (***Id.*** at p. 7). Plaintiff now challenges the lawfulness of each traffic stop in this Court. (***Id.*** at pp. 8-10). He challenges the seizure of his license plate and the temporary impoundment of his vehicle. (***Id.*** at p. 8). He claims that he was denied an opportunity to challenge the traffic stops. (***Id.*** at p. 9). And he says that Jonathan Barker, Dallas County Prosecuting Attorney, unlawfully coerced his guilty plea. (***Id.***).

**Discussion**

A trial court may authorize the commencement of any suit without prepayment of fees when an applicant files an affidavit indicating that she is unable to pay the costs of the lawsuit. **28 U.S.C. § 1915(a)(1)**. The applicant is unable to pay the costs of the lawsuit if she is forced to give up life's basic necessities to pay for them. ***Adkins v. E.I. Du Pont De Nemours & Co.***, 335 U.S. 331, 339 (1948). "[T]he decision whether to grant or deny in forma pauperis status is within the sound discretion of the trial court." ***Cross v. General Motors Corp.***, 721 F.2d 1152, 1157 (8th Cir. 1983).

Even if the applicant demonstrates an inability to pay the costs of a lawsuit, the Court must dismiss the case if the complaint is frivolous. **28 U.S.C. § 1915(e)(2)(B)(i).** "A claim is frivolous if it 'describ[es] fantastic or delusional scenarios,' 'its factual contentions are clearly baseless,' or 'lacks an even arguable basis in law.'" ***Adams v. United States***, 2017 WL 4583256, at *2 (E.D. Ark. June 26, 2017), *quoting* ***Neitzke v. Williams***, 490 U.S. 319, 327-28 (1989). The Court must also dismiss the case if the complaint fails to state a claim on which relief may be granted. **28 U.S.C. § 1915(e)(2)(B)(ii)**. A complaint properly states a claim "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Kulkay v. Roy***, 847 F.3d 637, 641-42 (8th Cir. 2017) (citation and quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009). A *pro se* complaint is construed "liberally, but the complaint must still allege sufficient facts to support the claims advanced." ***Sandknop v. Missouri Dep't of Corr.***, 932 F.3d 739, 741 (8th Cir. 2019). "To avoid summary dismissal, facts must be pleaded which support the prima facie elements." ***Orlando v. Alamo***, 646 F.2d 1288, 1290 (8th Cir. 1981). The Court will not "assume facts that are not alleged." ***Stone v. Harry***, 364 F.3d 912, 915 (8th Cir. 2004). Finally, the Court must dismiss the case if the complaint "seeks monetary relief against a defendant who is immune from such relief." **28 U.S.C. § 1915(e)(2)(B)(iii)**.

Here, Plaintiff's affidavit shows that he is unable to pay the costs of this lawsuit, but the Court must dismiss his complaint under Section 1915(e)(2)(B). Counts 1, 2, and 4 do not allege facts that overcome qualified immunity. Counts 5 and 6 fail to plead facts to support the claims advanced. Count 3 is barred by prosecutorial immunity. And Counts 7 and 8 are frivolous.

## I. Count 1 fails to plead facts to support a Fourth Amendment claim that overcomes qualified immunity for Deputy Brown. Plaintiff's Fourteenth Amendment claim in Count 4 fails for the same reason. Claims against Sheriff Creek and Dallas County in each count likewise fail.

Under 42 U.S.C. § 1983, Plaintiff alleges that Deputy Brown "deprived [him] of his Fourth Amendment right to be free from unreasonable seizure" when Deputy Brown stopped him on October 14, 2025 and January 20, 2026. (**Doc. 1-2**, p. 8). He also claims that the seizure of his "custom license plate" on October 14, 2025, and the impoundment of his vehicle on January 20, 2026 violated the Fourth Amendment. (***Id.***). He sues Deputy Brown in his official and individual capacities. (***Id.*** at p. 3). He sues Sheriff Darren Creek in his official capacity "for the policies,

customs, and practices that produced the constitutional violations suffered by Plaintiff." (***Id.***). And he sues Dallas County, Missouri for "constitutional violations resulting from its policies, customs, and practices, including its revenue-driven traffic enforcement system." (***Id.*** at p. 4).

"Qualified immunity shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Thurmond v. Andrews***, 972 F.3d 1007, 1011 (8th Cir. 2020) (internal quotation marks omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." ***Hunter v. Bryant***, 502 U.S. 224, 229 (1991) (internal quotation marks omitted). "To overcome qualified immunity, a plaintiff must be able to prove that every reasonable official would have understood that what he is doing violates a constitutional right and that the constitutional question was beyond debate." ***Story v. Foote***, 782 F.3d 968, 970 (8th Cir. 2015) (cleaned up) (affirming a preservice dismissal because the complaint failed to allege a Fourth Amendment violation that overcame qualified immunity). "The Supreme Court has emphasized that qualified immunity should be addressed as early as possible in litigation." ***Bradford v. Huckabee***, 330 F.3d 1038, 1041 (8th Cir. 2003).

Here, the complaint fails to allege facts that overcome Deputy Brown's qualified immunity. "[A] traffic violation—however minor—creates probable cause to stop the driver of a vehicle." ***United States v. Gregory***, 302 F.3d 805, 809 (8th Cir. 2002) (internal quotation marks omitted). The county has a "vital interest" in ensuring that "licensing, registration, and vehicle inspection requirements are being observed." ***Kansas v. Glover***, 589 U.S. 376, 381 (2020). Regardless of whether Plaintiff's license plate or vehicle violated Missouri law, Deputy Brown "was justified in making the stop if he objectively had a reasonable basis for believing that the driver has breached

a traffic law." ***United States v. Sanders***, 196 F.3d 910, 913 (8th Cir. 1999) (cleaned up). A seizure must be unreasonable to violate the Constitution. *See* ***C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347***, 591 F.3d 624, 633 (8th Cir. 2010). "Impoundment of a vehicle for the safety of the property and the public is a valid community caretaking function of the police." ***United States v. Petty***, 367 F.3d 1009, 1011-12 (8th Cir. 2004). And "the automobile exception to the Fourth Amendment's warrant requirement permits the warrantless search or seizure of a vehicle by officers possessing probable cause to do so." ***United States v. Soderman***, 983 F.3d 369, 375 (8th Cir. 2020).

Plaintiff admits that he did not register his vehicle with the state of Missouri, where he lives. He admits that he does not have a Missouri driver's license. He admits that he created his own license plate to avoid an unexplained fear of "surveillance infrastructure." He admits that he drove his vehicle after Deputy Brown seized his license plate. And he admits to pleading guilty to traffic offenses stemming from each stop. The most likely explanation is that Deputy Brown stopped Plaintiff on both occasions because he reasonably suspected Plaintiff of violating traffic laws. *See* ***Iqbal***, 556 U.S. at 681 (though a complaint's allegations were consistent with unlawful discrimination, more likely explanations did not plausibly establish an unlawful purpose). The related seizure of Plaintiff's license plate and impoundment of his vehicle are more likely explained by Deputy Brown's reasonable policing function. *See* ***id.***; ***Petty***, 367 F.3d at 1011-12; ***Glover***, 589 U.S. at 381.

On the facts alleged in the complaint, the Court may not reasonably infer that Deputy Brown committed a Fourth Amendment violation. "[W]hen seizing property for criminal investigatory purposes, compliance with the Fourth Amendment satisfies pre-deprivation procedural due process as well." ***Sanders v. City of San Diego***, 93 F.3d 1423, 1429 (9th Cir.

1996); ***PPS, Inc. v. Faulkner Cnty., Ark.***, 630 F.3d 1098, 1107 (8th Cir. 2011) ("The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the process that is due for seizures of property in criminal cases." (cleaned up)). So Plaintiff's Fourteenth Amendment claim fails for the same reason as his Fourth Amendment claim. And "[w]ithout a constitutional violation by [Deputy Brown], there can be no § 1983 or Monell liability" on behalf of Sheriff Creek or Dallas County for either Count 1 or Count 4. *See* ***Stockley v. Joyce***, 963 F.3d 809, 823 (8th Cir. 2020).

**II. Count II fails to plead facts to support a First Amendment claim that overcomes qualified immunity for Deputy Brown. Claims against Sheriff Creek and Dallas County likewise fail.**

In Count 2, Plaintiff alleges that he appeared in court on January 20, 2026 to contest his citation from the October 14, 2025 traffic stop. He claims that "[w]hile in the courthouse hallway outside the Court Clerk's office, Deputy Brown approached [him] and asked how he had gotten to court. Plaintiff answered that he had driven his van." (**Doc. 1-2**, p. 5). Deputy Brown then allegedly left the courthouse, waited for Plaintiff to come out, and stopped Plaintiff as he attempted to drive away. (***Id.***). Plaintiff frames this traffic stop as Section 1983 retaliation "against [him] for exercising his First Amendment right to petition the government." (***Id.*** at p. 8).

"[T]o prevail on a First Amendment retaliation claim, the plaintiff must show that the defendant would not have taken the adverse action but for harboring *retaliatory animus* against the plaintiff *because of* his exercise of his First Amendment rights." ***Mitchell v. Kirchmeier***, 28 F.4th 888, 896 (8th Cir. 2022) (quotation marks omitted) (emphasis added). "If the response was driven not by animus but by the defendant's understanding—however mistaken—of his official duties, then it was not retaliatory." ***Id.*** (internal quotation marks omitted). A plaintiff must "plausibly allege a causal connection between" retaliatory animus and the alleged injury.

***Poemoceah v. Morton Cnty., N. Dakota***, 117 F.4th 1049, 1056 (8th Cir. 2024) (dismissing a First Amendment relation claim because the court could not "infer a motive for the officers' actions that lack[ed] factual support in the complaint").

Plaintiff does not allege facts that allow the Court to reasonably infer that Deputy Brown committed a First Amendment violation. Plaintiff does not allege facts to support his claim that Deputy Brown acted out of animus rather than his understanding of his duties. The Court declines to infer such a motive. *See* ***Poemoceah***, 117 F.4th at 1056. Plaintiff told Deputy Brown he had driven his vehicle to court—apparently the same vehicle that caused Deputy Brown to issue the first citation. It is more likely that Deputy Brown pulled Plaintiff over a second time because he reasonably believed that Plaintiff committed another traffic violation. *See* ***Iqbal***, 556 U.S. at 681. But even if Plaintiff had alleged facts to support animus, his attempt to connect that animus to Plaintiff's exercise of his First Amendment rights is conclusory at best. Deputy Brown is entitled to qualified immunity from Count 2. Plaintiff did not allege facts to show that Deputy Brown was "plainly incompetent" or that he "knowingly violate[d] the law." ***Bryant***, 502 U.S. at 229. Count 2 also fails against Sheriff Creek and Dallas County. *See* ***Stockley***, 963 F.3d at 823.

## III. Counts 5 and 6 fail to plead facts to support a conspiracy under 42 U.S.C. § 1985.

After the January 20, 2026 traffic stop, Plaintiff tried to file a police report against Deputy Brown. (**Doc. 1-2**, p. 6). Deputy Rich Myers of the Dallas County Sheriff's Department allegedly directed Plaintiff to file a complaint instead. (***Id.***). But Plaintiff did not want to file a complaint "with the same department committing the violations." (***Id.***). He claims that Eric Caston, a Buffalo, Missouri Police Officer, was nearby and should have accepted his "official complaint" about Deputy Brown. (***Id.***). He casts Deputy Myers' guidance and Officer Caston's refusal, combined with Deputy Brown's actions, as "a conspiracy under 42 U.S.C. § 1985 to interfere with

Plaintiff's right to petition the government and his right to equal protection of the laws." (***Id.***). He separately charges Officer Caston under 42 U.S.C. § 1986 for knowing of the alleged conspiracy and failing to prevent it. (***Id.*** at p. 9).

The Court liberally construes Count 5 as a claim under 42 U.S.C. § 1985(2). ***Stone***, 364 F.3d at 915 (holding that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework"). Section 1985(2) "requires an allegation (and proof) of class-based animus." ***Harrison v. Springdale Water & Sewer Comm'n***, 780 F.2d 1422, 1429 (8th Cir. 1986). "A class must possess the characteristics of a discrete and insular minority, like race, national origin, or gender." ***Kvalvog v. Park Christian Sch., Inc.***, 66 F.4th 1147, 1154 (8th Cir. 2023). Regardless, "[a] conspiracy claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." ***Faulk v. City of St. Louis, Missouri***, 30 F.4th 739, 748 (8th Cir. 2022).

Here, Plaintiff does not allege that Deputy Brown, Deputy Myers, or Officer Caston acted on class-based animus. And his claim is entirely devoid of factual allegations that an agreement existed. Count 5 is wholly conclusory. ***Iqbal***, 556 U.S. at 678. Because a "section 1986 claim must be predicated upon a valid section 1985 claim," Count 6 also fails. See ***Gatlin ex rel. Est. of Gatlin v. Green***, 362 F.3d 1089, 1095 (8th Cir. 2004).

## IV. Count 3 is barred by prosecutorial immunity and Counts 7 and 8 are frivolous.

Under Section 1983, Count 3 accuses Mr. Barker of violating Plaintiff's Fifth, Sixth and Fourteenth Amendment rights when he allegedly coerced Plaintiff's guilty plea. (**Doc. 1-2**, p. 9). But Mr. Barker, as a county prosecutor, is "of course entitled to absolute immunity from such a claim." *See* ***Hayden v. Nevada Cnty., Ark.***, 664 F.3d 770, 772 (8th Cir. 2012). Under Count 7,

Plaintiff also charges Mr. Barker, along with Deputy Brown and Dallas County, of violating the Hobbs Act under 18 U.S.C. § 1951. Section 1951 criminalizes robbery and extortion affecting interstate commerce. **18 U.S.C. § 1951(a)**. Plaintiff claims that Deputy Brown's traffic stops and seizures, and Mr. Barker's alleged coercion, qualify. Count 7 is fantastic, delusional, and frivolous. Finally, in Count 8, Plaintiff alleges RICO violations against all Defendants under 18 U.S.C. §§ 1962(c), (d). Section 1962 criminalizes racketeering activity affecting interstate commerce. **18 U.S.C. § 1962**. Count 8 is wholly frivolous.

Accordingly, it is hereby **ORDERED** that Plaintiff's *pro se* Application for Leave to File Action Without Payment of Fees with Affidavit of Financial Status in Support (**Doc. 1**) is **DENIED** and the case is **DISMISSED**. Counts 1, 2, 3, and 4 of the complaint are **DISMISSED with prejudice**. Counts 5, 6, 7, and 8 of the complaint are **DISMISSED without prejudice**. Plaintiff's Motion for a Temporary Restraining Order (**Doc. 2**) and his Motion to Appoint Counsel (**Doc. 3**) are **DENIED** as **MOOT**.

The Clerk of Court is directed to mail a copy of this Order to Plaintiff at his last known address.

**IT IS SO ORDERED.**

/s/ Megan Blair Benton
MEGAN BLAIR BENTON
UNITED STATES DISTRICT JUDGE

Dated: August 21, 2026